**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MEAGAN COONS,

                         Plaintiff,

        v.                                          No. 1:17-CV-439
                                                  (TJM/CFH)
FAMILY COUNSELING CENTER OF
FULTON COUNTY, INC.,

                         Defendant.

_____

**APPEARANCES:**                                   **OF COUNSEL:**

Tully Rinckey                               KELLY A. MAGNUSON, ESQ.
441 New Karner Road                    NICHOLAS A. DEVYATKIN, ESQ.
Albany, New York 12205
Attorneys for plaintiff

Johnson & Laws, LLC                   GREGG T. JOHNSON, ESQ.
648 Plank Road, Ste. 204             COREY A. RUGGERIO, ESQ.
P.O. Box 270                             LORAINE CLARE JELINEK, ESQ.
Clifton Park, New York 12065
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER

      Presently pending before the Court is plaintiff Meagan Coons' motion for

conditional certification of this matter as a collective action pursuant to Federal Rule of

Civil Procedure ("Fed. R. Civ. P.") 23(b)(3).  Dkt. No. 28.  Plaintiff also seeks an order

compelling defendant to provide plaintiff with the names and addresses of potential opt-

in plaintiffs.  Id.  Defendant Family Counseling Center of Fulton County ("FCC")

opposed the motion for conditional collective certification.  Dkt. No. 29.  Plaintiff filed a

reply.  Dkt. No. 32.  For the reasons that follow, it is recommended that plaintiff's motion

be granted.

## I. Background

Plaintiff Coons worked for FCC as a Domestic Violence Coordinator ("DVC") from March 2015 until August 2015, and as Domestic Violence Residential Advocate from August 2015 through September 2016.  Dkt. No. 1 ("Compl.") at 2.  Plaintiff contends that she was required to work in excess of forty hours per week "on an almost weekly basis."  Id.  Plaintiff contends that FCC failed to pay Coons and others similarly-situated "at any rate of pay, let alone at the statutorily-required overtime rate of one and one-half times their standard rate of pay, their agreed upon straight time rate of pay, or even the minimum wage rate, for virtually all hours that Coons and FLSA Plaintiffs worked per week in excess of forty (40)."  Id.

Plaintiff declares that she was required to work full-time, at forty hours per week, and "in addition, from at least March 2, 2015 onward," she also "often worked as an 'on call' worker" on weekends wherein she "often" worked one or two twenty-four hour shifts "performing her regular work duties."  Compl. at 9.  Plaintiff was compensated "for only forty (40) hours per week for this work schedule, plus a thirty ($30.00) dollar stipend for the weekend, resulting in her being unpaid at any rate for approximately twenty-four (24) to forty-eight (48) hours of work, when she should have been paid overtime."  Id.  While "on call," plaintiff, and others similarly situated, were "required to be available to answer calls from individuals who call Family Counseling's hotline; required to stay within twenty (20) minutes driving distance of the shelter and would be reprimanded for

straying too far; and, consistently take calls from clients and potential clients and log them in a computer tablet system." Id. at 10-11.  Because of the on-call requirements, plaintiff and others similarly situated were "unable to engage in any significant personal or social activities during the times they were on call . . . ." Id. at 11.  Plaintiff contends that defendant's failure to pay time and one-half for overtime work also violates New York Labor Law § 160 and 12 NYCRR § 142-2.2.  Id. at 12.

Plaintiff argues that she, and others similarly situated, should have been paid at an overtime rate of time and one-half for all hours worked over forty hours per week, and that such failure violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a).  Compl. at 11.  Further, plaintiff contends that by failing to pay her and others similarly situated at the minimum hourly rate for each hour worked, defendant violated FLSA § 206(a).  Plaintiff contends that defendant's failure to pay time and one-half for overtime work also violates New York Labor Law § 652(1) and 12 NYCRR § 142-2.1. Id. at 13.  Next, plaintiff alleges that defendant's failure to compensate employees who worked on call shifts at their regular rate of pay also violates New York Labor Law  §§ 190, 191, and 633(1).  Id.

Additionally, plaintiff contends that defendants "willingly failed to furnish Coons and FLSA Plaintiffs on each payday with accurate wage statements containing the criteria required," which violates New York Labor Law § 195(3).  Compl. at 15.  Further, plaintiff contends that under New York Labor Law § 198(1-d), defendant is liable to Coons and other potential plaintiffs for $100.00 per failure to provide accurate wage statements.  Plaintiff also contends defendant failed to provide plaintiff and potential

3

plaintiffs with "a wage notice at the time of hire . . . containing the accurate criteria enumerated under the NYLL."  Id.  Defendant is liable to plaintiff and potential plaintiffs for $50.00 "for each work week that the violations occurred or continued to occur, but not to exceed a total [of] two thousand five hundred dollars . . . ."  Id.

## II.  Legal Standard

Under the FLSA, "employers are required to compensate employees for all of the work performed, including overtime, in order to remedy 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health efficiency, and general well-being of workers.'"  Bowens v. Atlantic Maintenance Corp., 546 F. Supp. 2d 55, 81-82 (E.D.N.Y. 2008) (citing 29 U.S.C. §§ 202(a), 207(a)(1)) (additional citation omitted).  Specifically, the FLSA requires that employers pay employees one and one-half times their normal rate of pay for working in excess of forty hours per week. 29 U.S.C. § 207(a)(1).  FLSA § 216(b) further provides that:

> an action . . . may be maintained against any employer
> . . . by any one or more employees for and in behalf of
> himself or themselves and other employees similarly
> situated.  No employee shall be a party plaintiff to any such
> action unless he gives his consent in writing to become such
> a party and such consent is filed in the court in which such
> action is brought.

29 U.S.C. § 216(b).

Certification of a collective action under section 216(b) "is only a preliminary determination as to which potential plaintiffs may in fact be similarly situated."  Bowens,

546 F. Supp. 2d at 81-82 (citation omitted).  In general, courts within this Circuit apply a

two-step test in determining whether to certify a case as a collective action under the

FLSA.  This test is explained thoroughly in Scholtisek v. Eldre Corp.:

> In the first step, the court examines the pleadings and affidavits of the proposed collective action and determines whether the proposed class members are similarly situated. If the court finds that the proposed class members are similarly situated, the court "conditionally certifies" the class. Putative class members are given notice and the opportunity to "opt in" and the action proceeds as a representative action throughout discovery.
>
> > In this early phase, courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate. At the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination. To demonstrate that other potential plaintiffs are similarly situated to him, then, a plaintiff must make only a modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law. A plaintiff's burden at this stage is minimal, especially since the determination that potential plaintiffs are 'similarly situated' is merely a preliminary one.
> >
> > The second phase of an FLSA collective action inquiry occurs after discovery is largely complete and is typically precipitated by a motion for "decertification" by the defendant.  At this stage, the court makes a factual finding on the 'similarly situated' issue, based on the record produced through discovery. If the court finds that the claimants are similarly situated, the collective action may proceed to trial. If the claimants are not similarly situated, the court decertifies the class, and the claims of the opt-in plaintiffs are dismissed without prejudice. The class representatives then proceed to trial on their individual claims.

229 F.R.D. 381, 387 (W.D.N.Y. 2005)(internal citations and quotations omitted); see

also Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150, 157-58 (N.D.N.Y. 2008) (citing

Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 367-68 (S.D.N.Y. 2007)).

The FLSA does not define "similarly situated"; however, in assessing whether the potential plaintiff has met his or her burden, "district courts in this circuit look to the (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class."  Marin v. Apple-Metro, Inc., Nos. 12-CV-5274, 13-CV-1417, 2014 WL 7271591, at *1 (E.D.N.Y. Dec. 18, 2014)(quoting Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (internal quotation marks and additional citations omitted).   A plaintiff's burden at the first step may be satisfied with "substantial allegations" of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation.  See Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010) (quoting Ayers v. SGS Control Servs., Inc., 03-CV-9078 (RMB/RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)).

Thus, at this first step, a court is not to evaluate the merits.  Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 174 (1989); Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002).   However, although the burden on the plaintiff at this preliminary stage is modest, "it is not non-existent." Khan v. Airport Mgmt. Servs., LLC, No. 10-CV-7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011); Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).

### III.  Arguments

6

Coons contends that this action should be conditionally certified as a collective action and asks that the Court compel defendant "to produce the names and addresses of potential opt-in plaintiffs and request[s] permission to send a Court-authorized notice of this collective action to those individuals." Dkt. No. 28-3 at 2. Plaintiff argues that she needs only to make a "'modest factual showing' that the named plaintiff and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law' and are thus considered similarly situated under the FLSA.'" Id. at 8. Coons contends that the potential plaintiffs are similarly situated to herself, and states that she is aware, from speaking with other DVC, that potential plaintiffs also were not paid the minimum wage "for all hours worked and were not paid overtime wages for hours worked in excess of forty (40) per week." Id. at 9.

Plaintiff provides the declaration of Hallie Ehlen, a former DVC for FCC. Dkt. No. 28-2 at 7. Ehlen declared that she worked as a Domestic Violence Residential Advocate from November 2014 until August 2017. Id. Ehlen was required to work weekly on call shifts from 5:00 PM until 9:00 AM, during which she would perform "her regular work duties, for a total of approximately sixteen (16) hours per shift" and was "generally compensated at a rate of fifteen (15) dollars per sixteen (16) hour shift." Id. at 8. Ehlen was also required to work weekend on-call shifts, which were "one or more twenty-four (24) hour shifts, performing [her] regular work duties." Id. For on call weekend shifts, she was compensated $30 per twenty-four hour shift. Id. During on call shifts, Ehlen had to be available to answer calls from the hotline; stay within twenty-minutes driving distance of the shelter, and would be reprimanded if she strayed too far;

and took calls and logged calls into a computer tablet system.  Id.  Ehlen declared that she was unable to "engage in any significant personal or social activities while on-call because of both the geographic limitations and the requirement that I answer calls at any time and be ready to dispatch to a client at any time."  Id.  Ehlen stated that she was expected to work more than forty hours a week, and did "routinely" work more than forty hours per week.  Id. at 9.

Ehlen was paid $11.49/hour for her forty-hour per week shift, and an additional $30 per on-call weekend shift, and an additional $15 per weekday on-call shift.  Dkt. No. 28-2 at 9.  Ehlen contends that she was not paid the hourly minimum wage nor overtime of time and one-half for hours worked over forty hours per week.  Id.  Ehlen worked back-up on call shift beginning in March 2016 where she "worked the twenty-four (24) hours, seven (7) days a week, on-call back up shift."  Id.  For on-call back-up shifts, Ehlen was paid $30 per week for the whole week of performing an on-call back-up shift.  Id.  She was not paid minimum wage, "agreed upon straight time rate of pay," or overtime for the on-call back-up shifts.  Id.  Ehlen is aware that there are other DVCs who similarly were not paid their straight time pay rate, minimum wage rate, or overtime rate for performing on call or back-up on call shifts.  Id. at 10.

Defendant FCC argues that the motion for conditional collective certification must be denied because Coons' "erroneous subjective conclusion that being-on call meant she could engage in nothing else but wait for the phone to ring does not equate to a common policy or practice of the Family Counseling Center, Inc."  Id. at 5.  FCC argues that to make such a conclusion

8

> would be entirely fact specific based upon each employee's
> perceived notion of what being available meant and how it
> affected an employee's use of their personal time when on
> call.  As such, this situation is not ripe for conditional
> certification as each individuals [sic] situation would be fact
> specific and thereby not part of a similarly situated class.

Dkt. No. 29-4 at 5.

Defendant contends that the only requirements for being on call were that the employee "'must be able to be reached by the Answering Service at all times while on-call.'" Dkt. No. 29-4 at 4.  FCC disputes that on-call employees were required to "remain in a certain location . . . or refrain from engaging in any personal activities while on call." Id. at 5.  Thus, FCC contends that the Court should deny the motion.  Id.   In reply, plaintiff argues that FCC "mischaracterizes" the "payment structure" of on-call shifts, contending that on-call employees were paid an "off the clock rate, and not an hourly rate while waiting for cals as well as when actually answering calls and performing intakes.  Defendant makes it appear as if an incoming phone call triggered the payment of a clock-in hourly rate, but this is not the case."  Dkt. No. 32 at 6.

For the reasons that follow, it is recommended that plaintiff's motion for conditional collective certification be granted, and that the Court compel defendant to provide the names and addresses of potential opt-in plaintiffs.

## IV.  Analysis

As repeatedly stated by courts in this Circuit, the relevant issue at this first stage "is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but

rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week." Salomon v. Adderley Industries, Inc., 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) (citation omitted).  Thus, the "similarly situated" assessment focuses on the features that make the policy or practice unlawful. Ruggles, 591 F. Supp. 2d at 157.  The undersigned finds that plaintiff Coons has made a "modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law" by showing that she, and the potential opt-in plaintiffs who performed on-call or back-up on call work were not sufficiently paid for such work.  229 F.R.D. at 387.

Defendant makes several arguments as to the merits of plaintiff's claims, contending that the employees on call were not required to stay within a certain distance of the shelter or stay home, only to be accessible by phone.  In addition, plaintiff points out in her reply, defendant cites at least one case that involves a motion to proceed as a class action, a different and higher-standard than to be applied in the first stage of a conditional collective action certification.  See Dkt. No. 29-4 at 6 (citing Scott v. Aetna Services, 210 F.R.D. 261, 264-65 (D. Conn. 2002); see also dkt. no. 32 at 9.  It is well-settled that the Court is not to assess the merits of the underlying claims while assessing a motion for conditional collective certification.  Applying a "liberal interpretation," as this Court must, Civil Ass'n of the Deaf of New York City, Inc. v. Giuliani, 915 F.Supp. 622, 632 (S.D.N.Y. 1996), it is at least feasible that if an employee is on-call, and the on-call duties would require an employee to be prepared to respond to a call by responding to a hotline call at an emergency room, police

10

department, or emergency location, the employee would necessarily need to stay within a certain distance of the area.  Dkt. No. 29-2 at 3.

Coons has met her burden in proving that she is substantially situated to other potential plaintiffs as she has provided "substantial allegations of a factual nexus" between her self and potential opt-ins.  Cohen, 686 F. Supp. 2d at 326.  Defendant contends that Coons and the potential opt-in plaintiffs are not similarly situated because other on-call employees may use their on-call time in different ways or may not feel as restricted as plaintiff.  See Dkt. No. 29-4 at 5.  However, this argument must fail at this early stage of the proceedings for two main reasons.  First, plaintiff has presented a declaration from potential opt-in plaintiff Ehlen, who indicated that she was not paid overtime for more than forty hours of work, was not paid time and one-half for overtime, and was not paid minimum wage nor straight pay for the hours worked in excess of forty hours per week.  Dkt. No. 28-2 at 7-10.  Ehlen states that she was required to be within twenty minutes driving distance from the shelter in case she needed to "be ready to dispatch to a client at any time," and that this impacted her ability to engage in social and personal activities.  Dkt. No. 28-2.  Ehlen contends that she was aware that other "DVC's [sic] performed similar or the same duties and were also unable to engage in other activities while on-call."  Dkt. No. 28-2 at 3.  Ehlen "took notice that other DVC's [sic] and other employees that performed the same or similar work to the DVC's [sic] and I also routinely worked more than forty (40) hours in a work week."  Id. at 3-4.  She makes similar declarations about overtime pay, straight pay, and minimum wage for herself and other DVCs who worked in excess of forty hours per week.  Id. at 5.

11

Second, even if DVC employees spent their on-call time in different ways, or did not feel as restricted as plaintiff, plaintiff has demonstrated that she was restricted, or reasonably felt she was restricted, while working on-call and back-up on-call shifts, and that other employees performing similar duties likely also reasonably felt, and were, restricted.  Plaintiff has submitted a "job duties description for a DVC on-call employee" which indicates that employees must "stay within 20 min. of shelter while on call" and "[r]espond to shelter emergencies immediately and professionally."  Dkt. Nos. 28-1 at 2 12, 28-2 at 12.  Additionally, defendant submitted a form listing "position specific responsibilities" which states that employees "[m]ust be able to be reached by the Answering Service at all times while on-call."  Dkt. No. 29-2 at 3.  These papers suggest that plaintiff, and other DVC employees, would necessarily be restricted in their ability to engage in personal or social activities or travel beyond a certain distance while on call . Although defendants argue that being available by phone is the only requirement of on call employees, it is feasible that employees may be limited in their on-call travel/activities if they must be reachable and potentially respond to calls during that on-call period.  As plaintiff and Elhern have both declared that they were met with these restrictions on call, and had to perform the same or similar duties while on call – including logging calls and performing intake – but were not paid overtime, minimum wage, or straight pay for these hours that went beyond forty hours a week, it is possible that other DVCs who worked on-call and back-up on-call shifts faced the same restrictions.

Further, defendants do not argue that DVC employees who performed on-call

and back-up on-call shifts had substantially different duties, schedules, or pay schemes; do not present disparate factual or employment settings of the individual plaintiffs; evidence that there are defenses available to it that are individual to the plaintiffs; or present evidence that procedural and/or fairness considerations that counsel for or against notification to the prospective plaintiffs. See Marin, 2014 WL 7271591, at *1.  "The district courts within this Circuit have faithfully held the standard of proof to be minimal rather than arduous."  Ruggles, 591 F.Supp. 2d at 158-59 (citing Lynch, 491 F.Supp .2d at 368) ("As a result of this two-step stage, the initial 'conditional certification' determination is a merely a preliminary finding.").   As plaintiff has met her minimal burden at this first stage insofar as she has demonstrated "substantial allegations" of a factual nexus between herself and potential opt-in plaintiffs, the undersigned finds that the motion for collective certification should be granted.  Cohen, 686 F. Supp. 2d at 326.  Accordingly, it is recommended that plaintiff's motion for conditional collective certification be granted.

Defendant does not address plaintiff's request that the Court order it to produce the names and addresses of potential opt-in plaintiffs.  A "court may . . . direct a defendant employer to disclose the names and addresses of potential class members." Cheng Xia Wang v. Shun Lee Palace Restaurant, Inc., 17-CV-840 (VSB), 2018 W L 3155835, at *3 (S.D.N.Y. June 28, 2018) (citing Hoffman-LaRoche, 493 U.S. at 169-70).  Although plaintiff does not, within her motion, request a time-frame for the employees whose names and addresses she wishes defendant to provide, her proposed notice from seeks to include DVCs who were employed by FCC three years

13

prior to the date of the District Judge's Decision.  Accordingly, it is recommended that, should the District Judge adopt this Report-Recommendation and Order, within thirty (30) days of entry the District Judge's Order, defendant must provide plaintiff with a list of the names and addresses all employees who served as Domestic Violence Counselors who worked on-call shifts or back-up shifts for three years prior to the date of the entry of the District Judge's Order.

Finally, plaintiff requests that the Court permit her counsel to send to the opt-in plaintiffs a proposed Court-Authorized Notice and Consent form to become a party plaintiff.  Dkt. No. 28-2.  Defendant does not address the proposed notice and consent form.  As the notice informs potential plaintiffs about the lawsuit, their potential ability to join the suit, the representation agreement, and the financial arrangement with the attorney, it suffices to inform the opt-in plaintiffs of nearly all of their rights and options in joining the suit.  It is recommended that plaintiff be permitted to sent the proposed notice and consent form to the potential opt-in plaintiffs.


## V.  Conclusion

**WHEREFORE**, for the reasons that follow, it is hereby

**RECOMMENDED**, that plaintiff's Motion for Conditional Collective Certification (Dkt. No. 28) be granted, and it is further

**RECOMMENDED,** that, should the District Judge adopt this Order, within thirty (30) days of the adoption of this Report-Recommendation and Order, defendant must provide plaintiff with the names and addresses of potential opt-in plaintiffs who were

14

employed as DVCs and worked on-call shifts and/or back-up on call-shifts three years prior to the date of the District Judge's Order adopting this Report-Recommendation and Order; and is further

**RECOMMENDED**, that the Court permit plaintiff to send the proposed notice and consent form to the opt-in plaintiffs; and it is

**ORDERED**, that the Clerk of the Court serve parties with a copy of this Report-Recommendation and Order in accordance with local rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72..

Dated: July 27, 2018
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge