UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MEAGAN COONS, Individually and on behalf
of all others similarly situated,
as Class/Collective Representative,

                              Plaintiff,        **Civil Case No. 1:17-cv-00439**
                                                            **(TJM/CFH)**

    -against-

FAMILY COUNSELING CENTER OF
FULTON COUNTY, INC.,

                              Defendant.

---

**DEFENDANT'S OBJECTIONS TO THE REPORT-RECOMMENDATION
AND ORDER**

---

                                              JOHNSON & LAWS, LLC
                                              Attorneys for Defendant
                                              648 Plank Road, Suite 204
                                              Clifton Park, New York 12065
                                              Tel:    518-490-6428

Of Counsel:

Gregg T. Johnson, Esq. (506443)
Loraine C. Jelinek, Esq. (700354)

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

LEGAL STANDARD....................................................................................................................2

OBJECTIONS TO THE REPORT-RECOMMENDATION AND ORDER .................................3

    A.    PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED AS THE RR&O ACCEPTS THE ERRONEOUS ASSUMPTION THAT THE PROPOSED CLASS MAINTAINED THE POSITION OF BACK-UP ON-CALL EMPLOYEES...........................................................................3

    B.    PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED AS THE RR&O MISCLASSIFIED WHAT ON-CALL EMPLOYEES RESPONSIBILITIES WERE FOR THE PURPOSES OF BEING SIMILARLY SITUATED ..........................................................................................7

    C.    SINCE PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED, THE REMAINING RECOMMENDATIONS SHOULD LIKEWISE BE DENIED ...........................................................................10

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Espinoza v. 953 Assocs. LLC*,
  280 F.R.D. 113 (S.D.N.Y. 2011) ................................................................................3, 5

*Guillen v. Marshalls of MA, Inc.*,
  750 F. Supp. 2d 469 (S.D.N.Y. 2010) ........................................................................3, 4

*Scholtisek v. Eldre Corp.*,
  229 F.R.D. 381 (W.D.N.Y. 2005) ...................................................................................2

**Statutes**

Fair Labor Standards Act ................................................................................... *passim*

**PRELIMINARY STATEMENT**

Family Counseling Center of Fulton County, Inc. (hereinafter "Defendant" or "FCC"), by and through its attorneys, Johnson & Laws, LLC, respectfully submits the following Objections to the July 27, 2018, Report Recommendation and Order issued by U.S.M.J. Christian F. Hummel. (Dkt. No. 44) (hereinafter "RR&O"). By the RR&O, the Honorable Magistrate Judge Hummel recommended that Plaintiff's December 11, 2017, motion for conditional collective certification be granted in all respects.

Defendant's January 2, 2018, Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification of a Collective Action originally sought dismissal of Plaintiff's motion for conditional collective certification on the grounds that: (1) the purposed class is not similarly situated due to the fact-specific inquiry regarding how each employee subjectively used their time spent "on-call." While Defendant maintains that dismissal of Plaintiff's Complaint as against it is warranted on these grounds, the instant objections are intended to underscore how the RR&O is founded upon the erroneous assumption advanced by Plaintiff that the potential opt-in plaintiffs maintained the positions of both on-call and back-up on-call employees. (RR&O Dkt. No. 44 p. 13). Furthermore, it is respectfully submitted that the RR&O erred in its determination of what the on-call employees responsibilities were for the purposes of being similarly situated when it misclassified a questionnaire/application as being the on-call advocates official job description. *See id.* For the following reasons, Defendant respectfully requests that Plaintiff's motion for conditional collective certification be denied under the Fair Labor Standards Act (hereinafter "FLSA").

1

## **LEGAL STANDARD**

In this Court's RR&O, the two-step test in the case of *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) was used in determining whether to certify a case as a collective action under the FLSA. (RR&O Dkt. No. 44 p. 5). *Scholtisek* states that:

> In the first step, the court examines the pleadings and affidavits of the proposed collective action and determines whether the proposed class members are "similarly situated." If the court finds that the proposed class members are similarly situated, the court "conditionally certifies" the class. Putative class members are given notice and the opportunity to "opt in" and the action proceeds as a representative action throughout discovery.
>
> In this early phase, courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate. "At the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." To demonstrate that other potential plaintiffs are similarly situated to him, then, a plaintiff must make only a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." A plaintiff's burden [at this stage] is minimal, especially since the 'determination that potential plaintiffs are similarly situated' is merely a preliminary one.
>
> The second phase of an FLSA collective action inquiry occurs after discovery is largely complete and 'is typically precipitated by a motion for "decertification" by the defendant. At this stage, the court makes a factual finding on the "similarly situated" issue, based on the record produced through discovery. If the court finds that the claimants are similarly situated, the collective action may proceed to trial. If the claimants are not similarly situated, the court decertifies the class, and the claims of the opt-in plaintiffs are dismissed without prejudice. The class representatives then proceed to trial on their individual claims. *Scholtisek*, 229 F.R.D. 381 at 387; (RR&O Dkt. No. 44 p. 5).

The RR&O also addresses how the FLSA does not define what constitutes "similarly situated" for the purposes of determining whether a collective action should proceed. (RR&O Dkt. No. 44

2

p. 6). It states that "in assessing whether the potential plaintiff has met his or her burden, 'district courts in this circuit look to the (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for, or against, notification to the class.'" *See id.*

<b><u>OBJECTIONS TO THE REPORT-RECOMMENDATION AND ORDER</u></b>

**A.   PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED AS THE RR&O ACCEPTS THE ERRONEOUS ASSUMPTION THAT THE PROPOSED CLASS MAINTAINED THE POSITION OF BACK-UP ON-CALL EMPLOYEES**

With regard to collective actions, this Court's RR&O makes clear that "a plaintiff's burden at the first step may be satisfied with *substantial* allegations of a factual nexus between named plaintiffs and potential opt-in plaintiffs." (RR&O Dkt. No. 44 p. 5) (emphasis added). While the plaintiff's burden at the initial stage is described as being "modest," it has been found that this modest factual burden "is not non-existent," and "cannot be satisfied simply by unsupported assertions." *See Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 123 (S.D.N.Y. 2011); *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) ("[T]he burden is not non-existent and the factual showing, even if modest, must still be based on some substance.").

The RR&O explicitly stated that Plaintiff had met her burden at this first stage by demonstrating that she and potential opt-in plaintiffs "were victims of a common policy or plan that violated the law by showing that she, and the potential opt-in plaintiffs, <u>who performed on-call or back-up on call work</u>, were not sufficiently paid for such work." (RR&O Dkt. No. 44 p. 10). The RR&O further emphasized how Defendant did "not argue that [other] employees <u>who</u>

3

performed on-call **and** back-up on-call shifts had substantially different duties, schedules, or pay schemes [and did] not present disparate factual or employment settings of the individual plaintiffs." (RR&O Dkt. No. 44 p. 13). By this analysis, this Court appeared to conclude that since the potential opt-in plaintiffs engaged in on-call **and** back-up on-call work, they were similarly situated to Plaintiff and proposed representative Hallie Ehlen (hereinafter "Ms. Ehlen"), since they had the same duties, schedules and worked under the same factual or employment settings as the on-call and back-up on-call advocates. *See id.*

Furthermore, both Plaintiff and Ms. Ehlen are not only alleging that Defendant violated their rights under the FLSA with regard to the hours they worked as the "on-call" advocates, but also with respect to the duties and/or responsibilities they allegedly performed while they worked as the "back-up on-call" employees—i.e., the employees who would, by default, automatically receive FCC hotline calls when the "on-call" employees failed to answer their phone during their on-call shifts. (Dkt. No. 28-2, Coons Aff. ¶ 6; Dkt. No. 28-2, Ehlen Aff. ¶ 22). While Plaintiff and Ms. Ehlen make similar declarations that they both worked this "back-up on-call" position, nowhere in the pleadings does Plaintiff allege that any of the potential opt-in plaintiffs ever maintained this same position or worked under the same settings which required them to hold the duties and/or responsibilities as the "back-up on-call" advocate. *See id.* In fact, all that both Plaintiff and Ms. Ehlen allege with regard to the potential opt-in plaintiffs are that these other employees "performed similar or the same duties and were also unable to engage in other activities while on-call." (Coons Aff. ¶ 9; Ehlen Aff. ¶ 12). Ms. Ehlen even avers that while she was working in her capacity as back-up on-call employee, she "routinely spoke on the phone with other [employees] who were then working their on-call shifts"—evidencing that the two positions involved disparate duties and responsibilities since there would be no need for the

4

back-up on-call employees if all job expectations were being met by the on-call advocates. (Ehlen Aff. ¶ 22); (RR&O Dkt. No. 44 p. 6).

Stated another way, the very existence of active back-up on-call duties and responsibilities directly undermines the liability theory of the on-call workers who the named Plaintiff seeks to represent by the fact that there is a clearly disparate employment setting involving disparate duties and responsibilities between the two positions. (Coons Aff. ¶ 9); (Dkt. No. 29-2, Ex. "B"). The RR&O fails to address the fact that there are no factual allegations demonstrating that any potential opt-in plaintiff ever held a back-up on-call position. (RR&O Dkt. No. 44 p. 12). Plaintiff has curiously failed to submit any evidence whatsoever which demonstrates what the duties, responsibilities and/or schedules of the back-up on-call position actually are, even though it is indisputable that these two positions incorporate disparate facets or else there would be no need for them to exist simultaneously. (Ehlen Aff. ¶ 22). Alternatively, the RR&O seems to accept the conclusory (and erroneous) assumption that since Plaintiff and Ms. Ehlen worked the back-up on-call positions, the potential opt-in plaintiffs must have as well. (RR&O Dkt. No. 44 p. 10) ("[D]efendants do not argue that [other] employees who performed on-call and back-up on call shifts . . .") (emphasis added). Since it has not been demonstrated that the potential opt-in plaintiffs engaged in the same back-up on-call work as did Plaintiff and Ms. Ehlen, the fundamental basis for this Court's finding that Plaintiff satisfied her burden of being similarly situated cannot stand as a matter of law. (RR&O Dkt. No. 44 p. 6); *see also Espinoza*, 280 F.R.D. 113 at 123 ("The modest factual showing cannot be satisfied simply by unsupported assertions"). Moreover, because it has not been demonstrated that any potential opt-in plaintiffs ever held or engaged in back-up on-call work, the Plaintiff's motion for conditional collective certification must be dismissed since there are "disparate factual and

5

employment settings of the individual plaintiffs," and employees who performed the on-call and back-up on-call work did in fact have, at the very least, disparate duties, responsibilities, and/or schedules, representing a disparate employment setting. (RR&O Dkt. No. 44 pp. 6, 13); (Dkt. No. 29-2, Ex. "B").

Additionally, there exists a real potential for a substantive conflict between the named Plaintiff and the potential opt-in plaintiffs who worked on-call. As this Court is aware, Plaintiff's central FLSA liability theory is that the "on-call" responsibilities were so immediate and continuous that the entire on-call shifts constituted compensable time. (Dkt. No. 32, Pl's Reply pp. 2–3). However, by the named Plaintiff's actual admissions—that she performed "back-up on-call" work while other employees worked "on-call"—the liability theory of the potential opt-in plaintiffs is directly undermined since the "on-call" duties and responsibilities were, by Plaintiff's own acknowledgment, not so immediate and continuous if there were designated employees assigned to work as the "back-ups" to these "on-call" advocates. (Coons Aff. ¶ 6; *see also* Dkt. No. 28-2, Ehlen Aff. ¶ 22); (Dkt. No. 28-3, Pl's MOL p. 9) ("Ehlen was the back-up on-call person in which capacity she was responsible for handling calls that the normal on-call person was unavailable for").

With respect to the applicable test relied upon in the RR&O, since it has been shown that Plaintiff and Ms. Ehlen worked the additional position of "back-up on-call," there are defenses available to Defendant with regard to these representative Plaintiffs—i.e., defenses as to how the duties and responsibilities of the back-up on-call advocate did not violate the FLSA—that are different from the potential opt-in plaintiffs who never held such back-up on-call position. (RR&O Dkt. No. 44 pp. 6, 12–13). Moreover, there is "present evidence [of] procedural and/or fairness considerations that counsel . . . against notification to the prospective plaintiffs" since it

is not fairly or procedurally sound to engage in an in-depth analysis and evaluation of an alleged FLSA violation for a position in which none of the potential opt-in plaintiffs ever maintained. (RR&O Dkt. No. 44 p. 13). In fact, by Plaintiff's own admissions in its Reply Memorandum of Law, denial of a conditional collective is appropriate here "where plaintiffs are attempting to shoehorn proposed class members <u>with distinct job duties and responsibilities,</u> and in that context <u>the inquiry becomes very individualized and therefore inappropriate</u> for class certification." (Dkt. No. 32, Pl's Reply p. 5) (emphasis added). Contrary to Plaintiff's assertion that "there is no allegation by Defendants that Plaintiff and those similarly situated have <u>distinct job duties and responsibilities,</u>" in accordance with the facts and Defendants preceding arguments, it is clear that, as a matter of law, Plaintiff and Ms. Ehlen are <u>not</u> similarly situated to the potential opt-in plaintiffs, and therefore, Plaintiff's motion should be denied in all respects. (Dkt. No. 32, Pl's Reply p. 5); (RR&O Dkt. No. 44 p. 6) (emphasis added).

**B.  PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED AS THE RR&O MISCLASSIFIED WHAT ON-CALL EMPLOYEES RESPONSIBILITIES WERE FOR THE PURPOSES OF BEING SIMILARLY SITUATED**

Defendant initially argued that Plaintiff's motion for conditional certification must be denied as the proposed class was not similarly situated due to the fact-specific inquiry regarding how each employee subjectively viewed and used their time while they were "on-call." (RR&O Dkt. No. 44 p. 11). This Court rejected this argument, reasoning that since Plaintiff demonstrated that she reasonably felt restricted while working on-call, other employees "performing similar duties likely also reasonably felt, and were, restricted." (RR&O Dkt. No. 44 p. 12). These "restrictions" are based on the erroneous notion that Defendant's on-call employees were "required" and "must" stay within 20 minutes of the shelter during their shifts. *See id.* However, this argument lacks merit since the evidence Plaintiff relies on in support of

7

this assertion is a document which does not describe the official job responsibilities of on-call advocates. (*See* Dkt. No. 28-2, Ex. "C").

The RR&O specifically relied on documents which were submitted by Plaintiff in making the determination that the potential opt-in plaintiffs were restricted in their ability to engage in personal or social activities or to travel beyond a certain distance. (RR&O Dkt. No. 44 p. 12). These documents consisted of what the Plaintiff and this Court identified as a "job duties description for a DVC on-call employee" and "a form" listing "position specific responsibilities." *See id.* While this Court relied on the "job duties description for a DVC on-call employee" document in making its determination of what the Plaintiff's (and the potential opt-in plaintiffs) duties as on-call employees were, this document is, in fact, not even Defendants official form which lists the specific job responsibilities of on-call advocates. (*See* Dkt. No. 28-2, Ex. "C").

The form relied upon in the RR&O is misclassified, as it is merely a questionnaire/application in which prospective candidates whom are interested in a position can fill out, as evidenced by the "information about the DV Program" and "information about the position" titles and questions a prospective employee can complete to show why they would be a good candidate. *See id.* Moreover, this form merely lists certain factors in which Defendant may (and rightfully so in Defendant's capacity as an employer) consider when evaluating a potential candidate. *See id.* While this "job duties description for a DVC on-call employee" form references prospective employees staying within 20 minutes of the shelter, it does not establish 20 minutes as an official job responsibility or that employees must or are required to stay within 20 minutes of the shelter, as was incorrectly concluded in the RR&O. (*See* Dkt. No. 28-2, Ex. "C"); (RR&O Dkt. No. 44 p. 12) ("Plaintiff has submitted a job duties description for a

8

DVC on-call employee which indicates that employees <u>must</u> stay within 20 min. of shelter") (emphasis added). It is axiomatic that it is the Defendant-Employer that defines the "on-call" functions or "job description," not the subjective perceptions of individual former employees. (*See* RR&O Dkt. No. 44 p. 12). Because the document this Court relied on when evaluating what the Plaintiff's (and the potential opt-in plaintiffs') positions as on-call advocates encompassed was misclassified and is not in fact Defendant's job description, this document should not have been relied upon in determining whether Plaintiff and potential opt-in plaintiffs were similarly situated. *See id.*; (*See* Dkt. No. 28-2, Ex. "C").

It is critical to note that Defendant's actual job description for "on-call" advocates does <u>not</u> list any requirement specifying that "on-call" advocates must stay within 20 minutes of the shelter. (*See* Dkt. No. 29-2, Ex. "B"). In fact, this alleged "requirement" is not even remotely mentioned in the "on-call" advocates job responsibilities description as there is no distance requirement <u>at all</u>. *See id.* As Defendant previously argued in its Memorandum of Law, the only actual requirement listed in the official job description is that employees "must be able to be reached by the Answering Service at all times while on-call." (*See* Def's MOL Opp. p. 1); (*See* Dkt. No. 29-2, Ex. "B"). Furthermore, contrary to Plaintiff's claim that Plaintiff's job offer letter confirms her purported job description and her duties as an on-call advocate, there is <u>no</u> mention in this letter of there being any distance restriction. (Dkt. No. 32, Pl's Reply p. 6). Accordingly, Plaintiff's allegation that she believed she was unable to engage in personal or social activities because of this so-called "distance restriction" is, indeed, subjective and fact-specific as to each on-call employee's view of how they could spend their time—evidencing the fact that they are not similarly situated. *See id.* at 3. Just because Plaintiff "felt" she could not engage in personal or social activities or travel beyond a certain distance while she was on-call does not demonstrate

9

that Defendant maintained a policy or plan that violated the FLSA. (RR&O Dkt. No. 44 p. 12). In summation, because the RR&O misclassified and relied on a document that should not have been used in analyzing the actual job responsibilities of on-call employees, and since there is, in fact, no actual distance restriction on the on-call advocate position, Plaintiff has failed to meet her burden that the potential opt-in plaintiffs are similarly situated. (Dkt. No. 28-2, Ex. "C"); (Dkt. No. 29-2, Ex. "B").

C.    **SINCE PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED, THE REMAINING RECOMMENDATIONS SHOULD LIKEWISE BE DENIED**

Based on the preceding arguments demonstrating why Plaintiff's motion for conditional collective certification should be denied, the RR&O's Recommendation that Defendant must provide Plaintiff with the names and addresses of potential opt-in plaintiffs, and the Recommendation that the Court permit plaintiff to send the proposed notice and consent form to the opt-in plaintiffs, should likewise be denied as a matter of law.

## CONCLUSION

WHEREFORE, it is respectfully requested that the Court: (a) deny Plaintiff's motion for conditional collective certification under the Fair Labor Standards Act and; (b) grant such other and further relief in Defendant's favor as this Court deems just and proper.

DATED:     August 10, 2018

                                                    Respectfully submitted,

                                                    JOHNSON & LAWS, LLC

                                                    _____
                                                    Gregg T. Johnson